UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LUMENTUM OPERATIONS LLC,

      Plaintiff,

v.

NLIGHT, INC.; DAHV KLINER; and ROGER L. FARROW,

      Defendant.

CASE NO. C22-5186 BHS

ORDER

This matter is before the Court on Defendants nLIGHT, Dahv Kliner, and Roger Farrow's motion to exclude the testimony of Plaintiff Lumentum Operations LLC's damages expert witness, Donald Gorowsky. Dkt. 107. Because Lumentum is not legally entitled to recover the types of damages to which Gorowsky would testify, the motion is granted.

## I. BACKGROUND

Kliner and Farrow are former employees of Lumentum's predecessor-in-interest, JDS Uniphase. Dkt. 32, ¶ 1. At JDS Uniphase, Kliner and Farrow each signed an agreement entitled, "Employee Proprietary Information and Inventions Agreement."

Dkts. 32-1, 32-2. In section 3 of this Agreement, Kliner and Farrow agreed to not disclose JDS Uniphase's proprietary information to "anyone outside" the company:

> During and after my employment with Company Group, I will not disclose any Proprietary Information to anyone outside Company Group, and I will use and disclose Proprietary Information to those inside Company Group only as may be necessary in the ordinary course of performing my duties as an employee of Company.

Dkt. 32-1 at 2.

Kliner and Farrow left JDS Uniphase in 2012 and 2013, respectively, to work for nLIGHT. Dkt. 32, ¶¶ 88–90, 92–94. Lumentum alleges that, after joining nLIGHT, Kliner and Farrow used JDS Uniphase's propriety information to assist nLIGHT in obtaining two categories of patents, the "adjustable beam patents" and the "triple-clad fiber patents." *Id.* ¶¶ 52–87; 96–565. Lumentum also alleges that nLIGHT used these patents to develop certain fiber laser products, the "Corona" and "AFX" fiber laser products. *Id.* ¶ 97.

In 2022, Lumentum sued, asserting breach-of-contract claims against Kliner and Farrow and correction-of-inventorship and declaration-of-patent-ownership claims against all Defendants. Dkt. 1, ¶¶ 652–729. Following the Court's prior order granting in part and denying in part Defendants' motion to dismiss, the sole remaining breach-of-contract claims against Kliner and Farrow concern whether they breached section 3 of their Agreements by disclosing JDS Uniphase's proprietary information to nLIGHT. Dkt. 40 at 22–23. The correction-of-inventorship and declaration-of-patent-ownership claims also remain. *Id.*

In support of its breach-of-contract claims, Lumentum seeks to present at trial testimony from its damages expert witness, Gorowsky, on three subjects: (1) the total compensation that Kliner and Farrow received when they were employed by JDS Uniphase; (2) the total compensation that Kliner and Farrow received when they were employed at nLIGHT; and (3) the total revenues and gross profits that nLIGHT has received from its Corona fiber laser products.[1] Dkt. 108 at 16.

Defendants move to exclude Gorowsky's testimony, making numerous arguments about why his testimony is unnecessary and unreliable. Dkt. 107 at 9–17. More persuasively, however, Defendants suggest that Gorowsky's opinions are irrelevant because Lumentum is not legally entitled to recover the types of damages to which he would testify.[2] *See* Dkt. 107 at 17. Defendants also assert that, because "there is no claim for money damages against nLIGHT," "Gorowsky's presentation of opinions about 'nLIGHT's Revenues and Gross Profits' could be interpreted as evidence of damages asserted against *nLIGHT*, rather than the two individuals against whom the breach of contract has been asserted." *Id.* at 18.

---

[1] It is not clear from Gorowsky's expert report whether he also opines on nLIGHT's revenues and gross profits resulting from the "AFX" fiber laser products.

[2] Defendants nevertheless extensively and unpersuasively argue that Gorowsky's testimony should be excluded simply because he "did not conduct any causal analysis or explain his causal assumptions despite the only claim allowing damages—breach of contract—requiring causation." Dkt. 107 at 6. As Lumentum correctly responds, "it is 'well established that experts on damages can assume causation.'" Dkt. 141 at 6 (emphasis removed) (quoting *Indect USA Corp. v. Park Assist, LLC*, No. 3:18-cv-02409-BEN-DEB, 2021 WL 4311002, at *3 (S.D. Cal. Sept. 22, 2021)). Defendants' reply concedes as much. Dkt. 145 at 5. The issue, then, is not whether Gorowsky establishes a causal connection to Kliner's or Farrow's alleged breach. It is whether Lumentum is legally entitled to recover the asserted contract damages to which Gorowsky would testify.

Lumentum argues that Gorowsky's testimony is admissible to establish damages for unjust enrichment. Dkt. 143 at 20. Lumentum asserts that "it is entitled to all or a portion of Kliner's and Farrow's JDSU compensation because their employment at JDSU was expressly conditioned on their agreement to abide by their [Employee Proprietary Information and Inventions Agreements], which prohibited the disclosure of JDSU Proprietary Information." Dkt. 141 at 11. It contends that "it is entitled to all or a portion of Kliner's and Farrow's nLIGHT compensation because their compensation was based at least in part on the value they brought to nLIGHT, which value was attributable to and the result of their disclosure of JDSU Proprietary Information." *Id.* at 12. Lumentum argues that, "[i]n connection with these arguments, Gorowsky's opinions regarding how to determine Kliner's and Farrow's compensation and nLIGHT's Corona Revenue with a reasonable degree of accounting certainty will be helpful to the jury." *Id.*

Defendants reply that Gorowsky's testimony "is irrelevant and untethered to the claims at issue because it is unsupported in both law and fact." Dkt. 145 at 4. They contend that California law[3] "does not support that an employee who provided value to his employer, but allegedly and while employed by a subsequent employer breached a specific term of his [prior employment] agreement, must forfeit every penny of compensation earned during both tenures as damages." *Id.* Defendants also assert that California law does not "support the idea that a plaintiff can force a defendant to disgorge profits that it did not earn." *Id.* They explain that "nLIGHT's profits did not flow to

---

[3] The parties agree that California law applies to the breach-of-contract claims.

Kliner and Farrow" and "[t]here is no evidence that Kliner and Farrow received even a percentage of the nLIGHT profit Lumentum now seeks to disgorge from them." *Id.* at 6. In sum, they argue, "[b]ecause Gorowsky opines on damages that Lumentum cannot legally recover, exclusion is appropriate." *Id.* at 4.

The issues are addressed in turn.

## II.  DISCUSSION

Lumentum asks the Court to set a dangerous precedent. It seeks to disgorge two former employees of the salaries and benefits that it paid to them over a decade ago, merely upon proof that these former employees breached a single provision of their employment agreements after their employment had ended and while they otherwise performed satisfactory work. *See* Dkt. 143 at 20. Under the circumstances of this case, such relief is plainly prohibited by both the California Labor Code and basic contract principles.

California's Labor Code expressly provides that "[i]t shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee." Cal. Lab. Code, § 221. "Labor Code section 221's rights are nonnegotiable and cannot be waived by the parties." *Sciborski v. Pac. Bell Directory*, 205 Cal. App. 4th 1152, 1166 (2012).

The statute defines "[w]ages" broadly to "include[] *all* amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." Cal. Lab. Code, § 200(a) (emphasis added). "Wages" also "'include[s] not only the

ORDER - 5

1  periodic monetary earnings of the employee but also *the other benefits to which he is*
2  *entitled as part of his compensation.*'" *Schachter v. Citigroup, Inc.*, 47 Cal.4th 610, 618
3  (2009) (emphasis added) (quoting *Wise v. Southern Pac. Co.*, 1 Cal.3d 600, 607 (1970)).
4  This "'includ[es] money, room, board, clothing, vacation pay, and sick pay.'" *Schachter*,
5  47 Cal.4th at 618 (quoting *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal.4th 1094,
6  1103 (2007)). "Incentive compensation, such as bonuses and profit-sharing plans, also
7  constitute wages." *Schachter*, 47 Cal.4th at 618. The Labor Code also defines "[l]abor"
8  broadly to "include[] labor, work, or service whether rendered or performed under
9  contract, subcontract, partnership, station plan, or other agreement if the labor to be paid
10 for is performed personally by the person demanding payment." Cal. Lab. Code, §
11 200(b).

12      Section 221 prevents Lumentum from recovering through its breach-of-contract
13 claims the salaries and benefits that JDS Uniphase paid Kliner and Farrow. The Northern
14 District of California's decision in *DHR Int'l Inc. v. Charlson*, No. C 14-1899 PJH, 2014
15 WL 4808752 (N.D. Cal. Sept. 26, 2014), is instructive. In that case, an employee's
16 employment agreement provided that he would receive a one-time bonus of $250,000 if
17 he satisfied a certain performance goal during his first six months of employment, and
18 another $250,000 if he satisfied the same goal during his second six months. *Charlson*,
19 2014 WL 4808752, at *1. The employment agreement also provided that "the two
20 $250,000 bonuses were 'subject to a claw back of $105,000 each should [the employee]
21 depart [the company] within one year of payment.'" *Id.*

22

The employee satisfied both goals and earned the two bonuses. *Charlson*, 2014 WL 4808752, at *1. However, ten months later, the company discharged him and demanded repayment pursuant to the clawback provision. *Id.* The company "claim[ed] that [the employee] had disclosed confidential company information and had attempted to solicit or induce other . . . personnel to terminate their relationships with [the company]." *Id.* The employee refused to make repayment, and the company sued for breach of contract, asserting that the employee "failed to comply with the clawback provision in the Employment Agreement." *Id.* at *2. Despite this express contract provision purporting to authorize such a chargeback, the court dismissed the breach of contract claim, reasoning that Cal. Lab. Code § 221 "prevents an employer from taking back wages earned and paid, and a commission chargeback is unlawful where the commission was fully earned at the time of a sale." *Charlson*, 2014 WL 4808752, at *7.

Because Kliner and Farrow long-ago earned the salaries and benefits that JDS Uniphase paid to them, section 221 prevents Lumentum from recovering these salaries and benefits as contract damages.

Allowing for such damages would also violate basic principles of contract law. In California, "[c]ontract damages are generally limited to those within the contemplation of the parties when the contract was entered into or at least reasonably foreseeable by them at that time." *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515 (1994). "This limitation on available damages serves to encourage contractual relations and commercial activity by enabling parties to estimate in advance the financial risks of their enterprise." *Id.* Consistent with this limitation, "[i]n absence of a special agreement,

an employer may not recover back wages or equivalent drawings paid during the period of completed employment." 24 RICHARD A. LORD, WILLISTON ON CONTRACTS § 66:13 (4th ed. 2024); *accord Gertler v. Davidoff Hutcher & Citron LLP*, 186 A.D.3d 801, 809, 130 N.Y.S.3d 50 (2020); *Willis v. Rehab Sols., PLLC*, 82 So.3d 583, 588 (Miss. 2012). For this reason, too, Lumentum is not entitled to recover as contract damages any portion of the salaries or benefits that JDS Uniphase paid to Kliner or Farrow.[4]

In support of its argument, Lumentum cites *L1 Techs., Inc. v. Chekanov*, No. 3:20-CV-00259-H-JLB, 2023 WL 5618942 (S.D. Cal. Aug. 30, 2023). Dkt. 141 at 11; Dkt. 143 at 20. In that case, a plaintiff corporation paid a defendant independent contractor $1,500 per month to work as a software engineer. *Chekanov*, 2023 WL 5618942 at *1. "Shortly after [the independent contractor] started work, it became clear to [the corporation] that [he] misled [it] about his credentials as a software engineer because he did not have the basic skills required to do the job." *Id.* at *2. The independent contractor accordingly "produced no usable work while working for [the corporation]." *Id.* The independent contractor also accessed the corporation's and its clients' "confidential intellectual property," "absconded with it," and "used [the] intellectual property to create" his own company "to offer competing products at lower prices." *Id.* Three months after the corporation hired the independent contractor, it terminated their agreement. *Id.*

---

[4] The Court need not decide whether Cal. Lab. Code § 221 would preclude Lumentum from recovering Kliner's and Farrow's earned and paid salaries and benefits at JDS Uniphase if an express contract provision purported to authorize such recovery. However, California caselaw suggests that, even in that event, the statute would preclude such recovery. *See Charlson*, 2014 WL 4808752, at *7; *Sciborski*, 205 Cal. App. 4th at 1166 ("Labor Code section 221's rights are nonnegotiable and cannot be waived by the parties.").

The corporation sued the independent contractor and proved that he breached their agreement, which "required [him] to ensure that the work he provided was 'high quality and competen[t]'" and "required that [he] 'shall not disclose confidential information.'" *Chekanov*, 2023 WL 5618942 at *3–4. The district court awarded the corporation, among other things, $4,500, which represented the amount that the corporation had paid the independent contractor for three months of work. *Id.* at *4.

*Chekanov* is inapposite. Unlike Kliner and Farrow, the defendant in that case was an independent contractor, not an employee. *See Chekanov*, 2023 WL 5618942, at *1. The independent contractor's earnings were also expressly conditioned on him producing "high quality and competen[t]" work product, and he "produced no usable work product while working for [the corporation]." *Id.* at *2–3. Lumentum's breach-of-contract claims are not based on such a provision, and it does not assert that Kliner or Farrow failed to produce any usable work product while they were employed by JDS Uniphase. Lumentum's reliance on this case is therefore misplaced.

*If* Lumentum establishes a genuine issue of material fact on its breach-of-contract claims and proves those claims at trial,[5] the Court will not permit it to disgorge Kliner or Farrow of the salaries and benefits that it paid to them over a decade ago for breaching a single provision of their employment contracts and while otherwise performing satisfactory work. Such damages are prohibited by Cal. Lab. Code § 221. Moreover, because Kliner's and Farrow's employment contracts do not contain any provision

---

[5] The Court expresses no opinion in this order as to whether Lumentum raises a fact issue on the merits of these claims.

ORDER - 9

1 | expressly authorizing such damages, allowing for these damages would defy the
2 | reasonable expectations of the contracting parties. Under these circumstances, such
3 | damages are improper as a matter of law. *See* Cal. Lab. Code, § 221; *Applied Equipment*,
4 | 7 Cal. 4th at 515; 24 WILLISTON ON CONTRACTS § 66:13.[6]

5 |       Nor is Lumentum entitled to recover damages for unjust enrichment. In California,
6 | "[a]s a matter of law, an unjust enrichment claim does not lie where the parties have an
7 | enforceable express contract." *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370
8 | (2010). In support of its assertion to the contrary, Lumentum cites to an unpublished
9 | Ninth Circuit opinion stating that, "under California law, 'a defendant's unjust
10 | enrichment can satisfy the "damages" element of a breach of contract claim, such that
11 | disgorgement is a proper remedy.'" Dkt. 143 at 20 (quoting *Foster Poultry Farms, Inc. v.*
12 | *SunTrust Bank*, 377 Fed. App'x 665, 669 (9th Cir. 2010) (unpublished)).

13 |       In support of this statement, the Ninth Circuit cited a California case, *Ajaxo Inc. v.*
14 | *E\*Trade Grp. Inc.*, which explained that "California's Uniform Trade Secrets Act (Civ.
15 | Code, § 3426 et seq.) . . . provides that upon proof of misappropriation, a plaintiff in a
16 | trade secret action 'may recover for the unjust enrichment caused by misappropriation
17 | that is not taken into account in computing damages for actual loss.'" 135 Cal. App. 4th
18 | 21, 61 (2005) (quoting Cal. Civ. Code, § 3426.3(a)). The plaintiff in that case alleged not

---

[6] The Court notes that, under California law, employees who violate their fiduciary duty of loyalty to their employer may be required to disgorge salary and benefits already paid as a result of engaging in such tortious conduct. *See Serv. Emps. Internat. Union, Loc. 250 v. Colcord*, 160 Cal. App. 4th 362, 371 (2008). Because Lumentum does not assert a tort claim against Kliner or Farrow for breach of any fiduciary duty that they may have owed JDS Uniphase, such damages are not warranted here.

ORDER - 10

only breach of contract, but also that the defendants "had misappropriated [its] trade secrets" in violation of the Uniform Trade Secrets Act. *Id.* at 40. Indeed, the operative complaint in that case, entitled "Fourth Amended Complaint for Misappropriation of Trade Secrets and Breach of Non-Disclosure Agreement," expressly asserted that "[t]he acts of Defendants as alleged constitute misappropriation of trade secrets, as defined in Civil Code §3425.1(b)" and requested "[u]njust enrichment damages pursuant to Civil Code Section 3426.3." *Ajaxo, Inc. v. E\*Trade Grp., Inc.*, 2003 WL 25778740 (Cal. Superior).

Lumentum's amended complaint does not assert a claim for misappropriation of trade secrets under California's Uniform Trade Secrets Act, otherwise mention or cite to this Act, or expressly request damages in the form of unjust enrichment in its prayer for relief. *See* Dkt. 32 at 269–71. For this reason alone, it is not entitled to seek damages for unjust enrichment.

In any event, Lumentum fails to adduce sufficient evidence of unjust enrichment. Lumentum seeks to have Gorowsky testify about the salaries and benefits that nLIGHT paid Kliner and Farrow. Dkt. 108 at 16, 18, 20–22, 23–25. Under Lumentum's own cited authority, to establish unjust enrichment, Lumentum would bear the burden of demonstrating what portion, if any, of the salaries and benefits that nLIGHT paid to them were for the intellectual property in dispute. *See Foster Poultry Farms,* 377 F. App'x at 669 (upholding a district court's award for unjust enrichment damages under California law when a defendant "misused [the plaintiff]'s information *for its own profit*" (emphasis added)). On this record, a jury would be required to speculate as to how much, if at all,

1  Kliner and Farrow were unjustly enriched by the disclosure of the information in dispute.
2  This is insufficient to establish a fact issue for trial. *See Nelson v. Pima Cmty. Coll.*, 83
3  F.3d 1075, 1081–82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a
4  factual dispute for purposes of summary judgment.").

5  Lumentum also seeks to have Gorowsky testify about nLIGHT's revenues and
6  gross profits from the Corona series fiber laser products. Dkt. 108 at 16–18. This is also
7  impermissible. As Defendants assert, "[t]here is no evidence that Kliner and Farrow
8  received even a percentage of the nLIGHT profit Lumentum now seeks to disgorge from
9  them" and "[t]hose benefits accrued to nLIGHT, who is not a party to the contracts at
10 issue and not a defendant on the breach of contract claims." Dkt. 145 at 6.

11 For these reasons, Gorowsky's testimony is not relevant to any claim for damages
12 in this case. Defendants' motion to exclude this testimony is accordingly **GRANTED**.

13 The Court notes that Lumentum's breach-of-contract claims do not necessarily fail
14 in light of this order. As Lumentum asserts in its response to Defendants' motion for
15 summary judgment, it may be entitled to recover nominal damages upon proving these
16 claims. Dkt. 143 at 21; *see* Cal. Civ. Code § 3360 ("When a breach of duty has caused no
17 appreciable detriment to the party affected, he may yet recover nominal damages.");
18 *Elation Sys., Inc. v. Fenn Bridge LLC*, 71 Cal. App. 5th 958, 965 (2021) ("California
19 courts have applied section 3360 to conclude that '[a] plaintiff is entitled to recover
20 nominal damages for the breach of a contract, despite inability to show that actual
21 damage was inflicted upon him.'" (Quoting *Sweet v. Johnson*, 169 Cal. App. 2d 630, 632
22

(1959)).). However, the Court expresses no opinion in this order on the merits of these claims, which will be addressed in a separate order.

### III.  ORDER

Therefore, it is hereby **ORDERED** that Defendant's motion to exclude Gorowsky's testimony, Dkt. 107, is **GRANTED**.

Dated this 6th day of September, 2024.

BENJAMIN H. SETTLE
United States District Judge