UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LUMENTUM OPERATIONS LLC,<br><br>            Plaintiff,<br><br>  v.<br><br>NLIGHT, INC.; DAHV KLINER; and ROGER L. FARROW,<br><br>            Defendant. | CASE NO. C22-5186 BHS<br><br>ORDER |

This matter is before the Court on Plaintiff Lumentum Operations LLC's and Defendants nLIGHT, Dahv Kliner, and Roger Farrow's[1] cross-motions for summary judgment, Dkts. 112 and 113, and Lumentum's motion to exclude testimony of nLIGHT's expert witness Peter Dragic, Dkt. 100.

Because Lumentum does not meet its burden of proof to establish any elements essential to its claims, nLIGHT's motion for summary judgment, Dkt. 113, is granted and Lumentum's motion for summary judgment, Dkt. 112, is denied.

---

[1] This Order refers to Defendants collectively as "nLIGHT" in the singular for clarity unless the context requires otherwise.

ORDER - 1

## I.  BACKGROUND

Lumentum and nLIGHT develop fiber optical laser systems. Dkt. 32, ¶ 1–2. Kliner and Farrow are former employees of Lumentum's predecessor-in-interest, JDSU Uniphase, and current employees of nLIGHT. *Id.*

JDSU required its employees to sign an "Employee Proprietary Information and Inventions Agreement." Dkts. 32-1, 32-2. Section 3 of the Agreement prohibited employees from disclosing JDSU's proprietary information to "anyone outside" the company "during and after [their] employment." Dkt. 32-1, ¶ 3. Section 6 required employees to assign all rights and interest in any "Company Innovations" to JDSU. *Id.* ¶ 6. Section 7 required employees to "disclose promptly in writing . . . all Innovations conceived, reduced to practice, created, derived, developed, or made" while employed at JDSU. *Id.* ¶ 7. The Agreement defined "Innovations" as "all discoveries, designs, developments, improvements, inventions (whether or not protectable under patent laws)." *Id.* ¶ 4.

In 2011, JDSU employee Martin Muendel authored a PowerPoint presentation titled "Switchable BPP concepts." Dkt. 120-5. JDSU filed a provisional patent application, No. 61/569,012, based on the contents of the presentation. Dkt. 114-9. In 2012, JDSU filed a nonprovisional patent application claiming priority to the provisional; the nonprovisional application incorporated the provisional by reference. Dkt. 114-10. It published as U.S. Pub. No. 2013/0148925 in June 2013 (2013 patent application) and later issued as U.S. Pat. No. 9,250,390 ('390). *Id.*

Kliner and Farrow left JDSU in 2012 and 2013, respectively, to work for nLIGHT. *Id.* ¶¶ 88–90, 92–94.

Lumentum alleges that after joining nLIGHT, Kliner and Farrow used JDSU's propriety information to assist nLIGHT in obtaining two categories of patents, the "adjustable beam patents" and the "triple-clad fiber patents." *Id.* ¶¶ 52–87; 96–565. In 2022, Lumentum asserted breach of contract claims against Kliner and Farrow, and correction-of-inventorship and declaration-of-patent-ownership claims against Kliner, Farrow, and nLIGHT for both sets of patents. Dkt. 1, ¶¶ 652–729.

The Court previously granted in part and denied in part nLIGHT's motion to dismiss. Dkt. 40. The sole remaining breach-of-contract claim against Kliner and Farrow concerns whether they breached section 3 of their Agreements by disclosing JDSU's proprietary information to nLIGHT. Dkt. 40 at 22–23. The correction-of-inventorship and declaration-of-patent-ownership claims against nLIGHT, Kliner, and Farrow remain. *Id.*

Lumentum moves for partial summary judgment on the correction-of-inventorship and declaration-of-patent-ownership claims for the adjustable beam patents. Dkt. 112. It also seeks to exclude nLIGHT's expert witness testimony, arguing it would materially rewrite a claim term to which the parties stipulated and which the Court has already construed. Dkt. 100.

nLIGHT cross-moves for summary judgment on all claims for both the adjustable beam and triple-clad fiber patents. Dkt. 113.

## II. DISCUSSION

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248.

On cross-motions, the defendant bears the burden of showing that there is no evidence which supports an element essential of the plaintiff's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Conversely, the plaintiff "must prove each essential element by undisputed facts." *McNertney v. Marshall*, No. C-91-2605-DLJ, 1994 WL 118276, at *2 (N.D. Cal. Mar. 4, 1994) (citing *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). Either party may defeat summary judgment by showing there is a genuine issue of material fact for trial. *Id.*; *Anderson*, 477 U.S. at 250. Although the parties may assert that there are no contested factual issues, this is ultimately the Court's responsibility to determine. *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

**A.    nLIGHT's Summary Judgment Motion on Lumentum's Correction-of-Inventorship Claims for the Adjustable Beam Patents is GRANTED.**

nLIGHT contends Lumentum has not met the heavy burden of proof required to succeed on the inventorship claims. Dkt. 113 at 19, 21, 28; Dkt. 139 at 6. Because JDSU's employment agreement required all employees to record innovations in writing whether or not they were patentable, nLIGHT argues, it is fatal to Lumentum's claim that Muendel did not submit an invention disclosure or write anything about the adjustable beam innovations in his lab notebook, which is otherwise "extensive" in its record of his daily tasks and patentable ideas. Dkt. 150 at 16.

Lumentum argues the Switchable BPP presentation and other internal presentations and emails prove that Muendel, and thus JDSU, contributed to the adjustable beam invention. Dkt. 143 at 22–26. It argues Muendel conceived the "Core-Ring Design" and "In-Fiber Perturbation" as disclosed in the adjustable beam patents. *Id.* at 26–27.

Lumentum's motion also claims that the Switchable BPP presentation indisputably discloses all elements of nLIGHT's parent adjustable beam invention, Dkt. 87 at 3, citing to its expert Dr. Dong's opening report. Dkt. 112 at 10–16. Lumentum argues Muendel should be added as an inventor because he authored the presentation. *Id.* at 24.

nLIGHT responds that the presentation does not show that Lumentum's device "actually function[s] to confine modified beam characteristics," as required by the second element of the parent invention. Dkt. 139 at 7–8.

The Court presumes inventorship of an issued patent is correct. *Hess v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed. Cir. 1997) (citing *Amax Fly Ash Corp. v. United States*, 514 F.2d 1041, 1047 (1975)); *Hip, Inc. v. Hormel Foods Corp.*, 66 F.4th 1346, 1350 (Fed. Cir. 2023). A claim of inventorship requires "clear and convincing evidence" that the patent was derived from the claimed inventor's work. *Id.* The "'temptation . . . to reconstruct, in a manner favorable to [the claimant's] own position, what their state of mind may have been years earlier, is simply too great to permit a lower standard.'" *Hess*, 106 F.3d at 980 (quoting *Amax*, 514 F.2d at 1047). Accordingly, the claimed inventor's testimony alone cannot satisfy this burden; the inventor "must provide independent corroborating evidence in addition to his own statements and documents." *Hahn v. Wong*, 892 F.2d 1028, 1032 (Fed. Cir. 1989); *Price v. Symsek*, 988 F.2d 1187, 1194 (Fed. Cir. 1993).

The Court reviews "all pertinent evidence" to verify the inventor's story. *Coleman v. Dines*, 754 F.2d 353, 360 (Fed. Cir. 1985). "'Documentary or physical evidence that is made contemporaneously with the inventive process provides the most reliable proof that the inventor's testimony has been corroborated.'" *Blue Gentian, LLC v. Tristar Products, Inc.*, 70 F.4th 1351, 1364 (Fed. Cir. 2023) (quoting *Sandt Tech., Ltd. v. Resco Metal and Plastics Corp.*, 264 F.3d 1344, 1351 (Fed. Cir. 2001)).

**1.    The Switchable BPP presentation does not disclose the second element of nLIGHT's adjustable beam invention.**

The Court must first determine whether the Switchable BPP presentation discloses the second element of the parent adjustable beam invention.

The second claim element recites: a "second length of fiber having a second [refractive index profile (RIP)], different from the first RIP, to confine at least a portion of the modified beam characteristics received from the first length of fiber within two or more confinement regions." Dkt. 87 at 3. While the parties have stipulated to the meaning of "confinement region," Dkt. 49 at 2, the remainder of the second claim element has not yet been construed in litigation.

When construing claim terms, the Court generally gives the "words of a claim '. . . their ordinary and customary meaning.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). The Court looks to "the meaning that the term would have to a person of ordinary skill in the art . . . in the context of the "entire patent, including the specification." *Id.* at 1313. The specification is the "single best guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582. The Court must also consider the patent's prosecution history, including the "prior art cited during the examination of the patent," though it may be less informative than the specification. *Phillips*, 415 F.3d at 1317.

In the context of patent infringement under the doctrine of equivalents, where a patentee must prove that the infringer's device performs the "same function in substantially the same way to achieve substantially the same result as the claimed device," the Federal Circuit has held the patentee cannot rely solely on offhand, conclusory, and non-particularized expert testimony. *Malta v. Schulmerich Carillons, Inc.*, 952 F.2d 1320, 1325, 1327 (Fed. Cir. 1991). The testimony must include a "sufficient explanation of both *why* the overall function, way, and result of the accused

device are substantially the same as those of the claimed device." *Id.* at 1327. While this case is not about patent infringement, Lumentum's inventorship claim is grounded in a similar "technical issue of equivalency." *Id.*

nLIGHT's adjustable beam patent specification describes several embodiments of each length of fiber with a different RIP. Dkt. 120-11. Figures 11–16 depict examples of the first length of fiber, showing RIPs with a "step-index," "pedestal," "multi-pedestal," or parabolic RIP. *Id.* at 12–14, 23, 28–29. Figures 17–19 depict examples of the second length of fiber with complex RIPs that vary along the radial distance of the fiber. *Id.* at 14–15, 23, 29–30.

The Switchable BPP presentation describes the use of a "double-clad silica delivery fiber" to "tweak GRIN [(Graded Index)] pitch." Dkt. 120-5 at 3. The presentation shows the fiber has a pedestal RIP due to its core, inner cladding, and outer cladding. *Id.* With minimal explanation, Dong states Lumentum's device modifies a beam in a first length of fiber and confines the modified beam in confinement regions in a second length of fiber. Dkt. 120-6 at 33-34. Dong attributes this to "total internal reflection" when the optical beam is "received in core of the second length of fiber at an incident angle that is greater than the critical angle of the inner cladding of the second length of fiber." *Id.* at 34-35.

Dong does not sufficiently explain "why the overall function, way, and result" of the device described in the Switchable BPP presentation is similar to that of the parent invention. *Malta*, 952 F.2d at 1327 (emphasis omitted). Rather, the expert report is conclusory, and "not sufficiently particularized," *id.*, to establish by clear and convincing

evidence that Muendel conceived a device with a "second length of fiber" that "confine[s] at least a portion of the modified beam characteristics received from the first length of fiber within two or more confinement regions." Dkt. 87 at 3.

nLIGHT is also correct that the embodiments in nLIGHT's adjustable beam patent specification, Dkt. 120-11, are distinct from what is shown in the Switchable BPP presentation, Dkt. 120-5. The specification includes several complex RIPs for the second length of the fiber that are markedly different than the pedestal RIP in the presentation. The specification does disclose a pedestal RIP, though it is directed to the first length of the fiber, and not the second length of fiber as in the Switchable BPP presentation.

Lumentum's Complaint asserts that its '390 patent discloses Muendel's switchable beam characteristics innovation. Dkt. 32 at 16, 20, ¶¶ 74–75. The '390 patent is listed as prior art on nLIGHT's adjustable beam patent. Dkt. 120-11 at 4. The Court may presume that the patent examiner considered the prior art listed on the face of the patent. *Stone Basket Innovations, LLC v. Cook Medical LLC*, 892 F.3d 1175, 1179 (Fed. Cir. 2018). The prosecution history therefore supports the Court's conclusion that the Switchable BPP presentation does not disclose the parent invention.

**2. There is insufficient evidence corroborating Lumentum's claim that Muendel contributed to nLIGHT's adjustable beam invention.**

The corroborating evidence supporting Lumentum's claim that Muendel contributed to the adjustable beam innovation is insufficient. While the two-page Switchable BPP concepts presentation indeed discloses a "Fiber undulator," it is far from sufficient to be "clear and convincing." Dkt. 120-5. Only two slides disclose a "Core and

ORDER - 9

ring(s)" delivery fiber design, one of which explicitly attributes the design to another company, Trumpf. Dkts. 144-3, 144-6, 144-28. Lumentum does not suggest there is any record of either innovation in Muendel's otherwise comprehensive 175-page lab notebook, Dkt. 151. Without any other convincing evidence "contemporaneous[] with the inventive process," the "strength of documentary evidence" does not favor Lumentum. *Blue Gentian*, 70 F.4th at 1364.

Lumentum does not "make a showing sufficient to establish an element essential" to its inventorship claims. *Celotex*, 477 U.S. at 322. No reasonable juror could find clear and convincing evidence that Muendel or other JDSU employees should be named inventors of nLIGHT's adjustable beam patents, as a matter of law. nLIGHT's summary judgment motion on Lumentum's inventorship claims regarding the adjustable beam patents is **GRANTED**. Lumentum's summary judgment motion on the inventorship claims for the adjustable beam patents is therefore **DENIED**.

**B.    nLIGHT's Summary Judgment Motion on Lumentum's Declaration-of-Patent-Ownership Claims for the Adjustable Beam Patents is GRANTED.**

nLIGHT asserts Lumentum's declaration-of-patent ownership claims fail because it cannot corroborate its inventorship claims.[2] Dkt. 113 at 31.

Lumentum argues its declaration-of-patent-ownership claims are not based on Muendel's inventorship, but Kliner's obligation to assign any inventions to JDSU under

---

[2] nLIGHT also argues that the declaration-of-patent-ownership claims are barred by California's three-year statute of limitations period. Dkt. 139 at 20–21. nLIGHT did not assert the statute of limitations as an affirmative defense against the ownership claims in its Answer. Dkts. 41–43. It therefore waived this affirmative defense. *See KST Data, Inc. v. DXC Tech. Co.*, 980 F.3d 709, 714 (9th Cir. 2020).

Section 6 of their employment agreement. Dkt. 143 at 33. It argues there is no dispute Kliner collaborated with Muendel on the Switchable BPP presentation and the adjustable beam innovation, and that Kliner therefore violated his employment agreement. Dkt. 112 at 25–27.

Lumentum is correct that Muendel's inventorship does not directly implicate its declaration-of-patent ownership claims. However, Lumentum's claim is premised on Farrow and Kliner's collaboration with Muendel on the Switchable BPP presentation. Because the Court concludes Muendel did not contribute to the adjustable beam innovation, as a matter of law, Lumentum's argument fails.

nLIGHT's summary judgment motion on Lumentum's declaration-of-ownership claims as to the adjustable beam patents is **GRANTED**. Lumentum's summary judgment motion on the ownership claims for the adjustable beam patents is **DENIED**.

C.  **nLIGHT's Summary Judgment Motion on the Inventorship and Ownership Claims for the Triple-Clad Beam Patents is GRANTED.**

nLIGHT maintains that Lumentum has not corroborated its inventorship claims as to the triple-clad beam invention, and therefore, the ownership claim should fail as well. Dkt. 113 at 31.

Lumentum alleges JDSU employees, including Muendel, conceived using a "crown spool" and the method of "selective partitioning" in the triple-clad beam invention. Dkt. 143 at 29–31. It cites to Muendel's deposition testimony and its expert Dong's report for support. *Id.*

1  A claim of inventorship requires "clear and convincing evidence" that the patent was derived from the claimed inventor's work. *Hip*, 66 F.4th at 1350.

nLIGHT's triple-clad beam patents require "a selected partitioning of a first selected portion of the pump light that is guided to propagate in the gain fiber by a boundary between the polymer cladding and outer cladding and a second selected portion of the pump light that is guided to propagate in the gain fiber by a boundary between the outer cladding and the inner cladding." Dkt. 114-27 at 10. According to nLIGHT this means, "a selected portion of pump light is intentionally placed in the outer glass cladding to be guided by the interface between the glass outer cladding and the polymer cladding." Dkt. 113 at 30 (emphasis omitted). One of the patents' specifications confirms that "pump light is coupled into a glass inner cladding and glass outer cladding of a gain fiber so that . . . the pump power propagates in an outer cladding situated about an inner cladding surrounding a doped core," whereas a "polymer cladding . . . defines [the] outer cladding." Dkt. 114-27 at 10. *See Vitronics*, 90 F.3d at 1582 (the specification is the "single best guide" to the construction of a disputed claim term).

Dong's report, Dkt. 114-1, does not show that any JDSU innovation uses selective partitioning as disclosed in nLIGHT's triple-clad beam patent. First, the report describes only inner and outer cladding, with no mention of a third polymer cladding. Next, the report discusses merely *guiding* pump light along the boundary of the inner and outer cladding of the glass, rather than selectively coupling the pump light into a glass inner cladding and a glass outer cladding. Dkt. 144-1 at 115–116, 118.

As for the "crown spool" innovation, it makes little sense to validate Muendel's claim of inventorship with his own deposition testimony. *See Blue Gentian*, 70 F.4th at 1357 (corroborating evidence may include the oral testimony of someone other than the alleged inventor). Nonetheless, Muendel testified that while he conceived the idea of using a "crown spool" in JDSU triple-clad beam innovations, he did not believe the nLIGHT triple-clad fiber patents require the use of a crown spool. Dkt. 144-35 at 4, 7. Dong similarly mentions once, in passing, that Muendel contributed "a particular solution (i.e., the crown spool)" to the triple-clad beam invention. Dkt. 144-1 at 131. Lumentum does not refer to any record of selective partitioning or a crown spool in Muendel's notebook.

Even viewing this evidence in the light most favorable to Lumentum, Lumentum presents insufficient evidence of Muendel's or other JDSU employees' contributions to the triple-clad beam inventions.

Lumentum's ownership claim is grounded on the assertion that Kliner and Farrow were involved in developing triple-clad fiber innovations at JDSU. Dkt. 143 at 33-34. It claims Kliner and Farrow were involved in JDSU's triple-clad beam project and that their names appear on relevant JDSU documents. *Id.* Because the Court concludes JDSU's innovations are distinct from those claimed in nLIGHT's triple-clad beam patents and because Lumentum provides no further evidence of any other contribution, the Court concludes that a reasonable juror could not find this evidence sufficient to meet Lumentum's burden of proof on its ownership claims, even viewed in the light most favorable to Lumentum. *See Celotex*, 477 U.S. at 322.

nLIGHT's summary judgment motion on the inventorship and ownership claims for the triple-clad beam patents is **GRANTED**.

**D.    nLIGHT's Summary Judgment Motion on Lumentum's Breach-of-Contract Claims against Kliner and Farrow is GRANTED.**

nLIGHT argues JDSU publicly disclosed the allegedly proprietary information in the published 2013 patent application and issued patent before Kliner and Farrow could have breached their contracts. Dkt. 113 at 12. nLIGHT argues that because the patent application claimed priority to the provisional, the content of the provisional became publicly available in June 2013. *Id.* at 9.[3]

Lumentum responds that there are "ample disputed material facts precluding summary judgment" because nLIGHT failed to include a statement of material facts pursuant to Local Civil Rule (LCR) 56.1 and because nLIGHT did not mention "what exactly" the two documents publicly disclose. Dkt. 143 at 10–11. It argues "the mere fact that some of the information in certain JDSU documents may have become 'publicly known or available' in 2013" does not mean that all the JDSU proprietary information at issue became public. *Id.* at 12 (emphasis omitted). It contends its definition of proprietary information, Dkt. 114-30 at 8–12, is non-exhaustive, and provides two examples of proprietary information the documents allegedly do not disclose. Dkt. 143 at 13.

---

[3] nLIGHT also argues Lumentum cannot demonstrate it suffered damages caused by Kliner and Farrow's alleged breach of Section 3 of their contract. Dkt. 113 at 12. The Court agreed in a previous Order. Dkt. 157 at 12. Lumentum may be entitled to recover nominal damages if it succeeds on its breach-of-contract claim.

ORDER - 14

Lumentum also argues nLIGHT could not have validly received its adjustable beam patents if JDSU had indeed published the proprietary information in 2013. *Id.* at 11.

### 1. The provisional and 2013 patent application disclose Lumentum's proffered examples of allegedly proprietary information.

nLIGHT's lack of a statement of facts does not preclude summary judgment. LCR 56.1 provides that one seeking or opposing summary judgment "shall not separately file a statement of material facts . . . but shall include them within the memorandum." The rule does not obviate the plaintiff's burden of proof in a defendant's motion for summary judgment. Whether to succeed on the breach of contract claim or rebut nLIGHT's assertion that the documents disclose the proprietary information, the burden of proof falls on Lumentum. *See Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 805-06 (1999) (quoting *Celotex*, 477 U.S. at 322 (1986)) (To survive a motion for summary judgment by the defendant, the plaintiff must "'make a showing sufficient to establish the existence of an element essential to [their] case, and on which [they] will bear the burden of proof at trial.'").

Lumentum offers only two examples of proprietary information allegedly not disclosed by the documents:

(1) a "first length of fiber within which beam characteristics are modified by a perturbation device, such as mechanical application of 'bend loss' or a long-period grating, in conjunction with a second length of fiber that confines the modified beam characteristics"; and

ORDER - 15

1       (2) a "first length of fiber within which beam characteristics are modified by . . .
2 perturbation devices . . . used in conjunction with a second length of fiber that is a multi-
3 clad fiber, such as one having a core and annular ring surrounding the core . . . to confine
4 a portion of the modified beam characteristics received from the first length of fiber
5 within two or more confinement regions." Dkt. 143 at 13 (emphasis omitted).
6       When a patent claims priority to an earlier filed provisional application, the patent
7 is treated as though it was "filed on the date of the provisional application." 35 U.S.C. §
8 119(e)(1). This means it is examined as prior art to a claimed invention as of the filing
9 date of its provisional application—the priority date. 35 U.S.C. § 102(d)(2); *Dynamic*
10 *Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1381 (2015). While a provisional
11 application may not be published, it must describe the invention claimed in the non-
12 provisional application in "full, clear, concise, and exact terms as to enable any person
13 skilled in the art . . . to make and use the same." *Id.* at 1378. Accordingly, the Court may
14 treat the content of a published patent application claiming priority to a provisional as
15 publicly disclosed on the priority date.
16       Because a valid claim of priority requires that the provisional discloses the
17 claimed invention in the non-provisional application, *Dynamic Drinkware*, 800 F.3d at
18 1378, and the 2013 patent application incorporates the provisional by reference, the Court
19 assesses whether the provisional discloses Lumentum's proffered examples of proprietary
20 information.
21       nLIGHT persuasively points to sections in the provisional that disclose these
22 examples. Dkt. 148 at 7–8. The provisional describes a system that varies laser beam

characteristics such as "focal spot size and divergence," Dkt. 114-9 at 3, using "mechanical 'fingers'" to produce "microbends or other perturbations in the fiber," *id.* at 7. It discloses fibers of different lengths, which may be "multi-clad" that can alter the divergence and spot size of another fiber to confine a beam to a "central core," "outer ring," or "inner ring." *Id.* And, the figures depicted in the provisional are the same as those Lumentum includes in the Amended Complaint to depict the proprietary information. *Id.* at 7, 14; Dkt. 32 at 16. The provisional discloses the two examples of proprietary information offered by Lumentum.

The Court concludes JDSU publicly disclosed the proprietary information when the patent application published in June 2013. Accordingly, the Court agrees with nLIGHT that no alleged breach of contract could have occurred after the proprietary information became public after June 2013.

**2.     nLIGHT did not breach its duty of candor by failing to disclose the provisional and 2013 patent application to the Patent Office.**

Lumentum argues that if JDSU did publicly disclose the proprietary information, the documents would be "invalidating prior art," rendering nLIGHT's adjustable beam patents invalid. Dkt. 143 at 11. "Tellingly," it argues, nLIGHT breached its duty of candor by failing to disclose the documents to the Patent Office. *Id.* at 17.

nLIGHT argues that it did disclose the 2013 patent application and the issued patent to the Patent Office, and that regardless, throughout litigation it has claimed its adjustable beam patents are distinct from anything disclosed by JDSU. Dkt. 148 at 8.

When applying for a patent, applicants have a duty of candor encompassing a duty to disclose "all information known to be material to patentability." 37 C.F.R. § 1.56(a). A breach of this duty "may render unenforceable all claims which eventually issue" from the application. *Fox Indus. Inc. v. Structural Pres. Sys., Inc.*, 922 F.2d 801, 804 (Fed. Cir. 1990).

Lumentum merely asserts that nLIGHT breached its duty of candor in obtaining its patents. In doing so, Lumentum presumes, but does not establish, that the documents disclose information material to nLIGHT's patents. Additionally, Lumentum does not address the fact that nLIGHT acknowledges that JDSU's variable beam patent "was in the prior art at the time nLIGHT applied for its patent." Dkt. 113 at 21. *See* Dkt. 120-11 at 4 (nLIGHT's adjustable beam patent U.S. Pat. No. 10,295,845 lists the '390 patent as prior art). Lumentum's argument on the validity of nLIGHT's adjustable beam patents fails as a matter of law.

Even when viewing the evidence most favorably to Lumentum, Kliner and Farrow prevail on the breach of contract claim.

E.    **Lumentum's Motion to Exclude is DENIED as moot.**

Lumentum seeks to exclude testimony of nLIGHT's expert, Dr. Dragic. Dkt. 100. Because nLIGHT's motion for summary judgment on all claims is **GRANTED**, the Court need not rule on the motion. This Order does not rely on any of Dragic's testimony.

### III.  ORDER

Therefore, it is hereby **ORDERED** that nLIGHT's motion for summary judgment, Dkt. 113, is **GRANTED**, and Lumentum's motion for summary judgment, Dkt. 112, is

**DENIED**. Lumentum's claims are **DISMISSED** with prejudice. The clerk shall enter a judgment and close the case.

Dated this 11th day of December, 2024.

BENJAMIN H. SETTLE
United States District Judge